# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 17-804V**
**Filed: December 4, 2018**
UNPUBLISHED

| | |
|---|---|
| JULIA HAYES,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Social Media; Discovery |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.*
*Traci R. Patton, U.S. Department of Justice, Washington, DC, for respondent.*

## ORDER COMPELLING PRODUCTION OF SOCIAL MEDIA POSTS AND VIDEO RECORDINGS[1]

The parties dispute whether the petitioner, Julia Hayes, is required to produce her social media posts and video recordings. For the reasons explained below, she is.

On June 15, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that that her influenza ("flu") vaccination on September 29, 2016 caused her to suffer a shoulder injury related to vaccine administration ("SIRVA"). (ECF No. 1 at 1.) The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] The undersigned intends to post this ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On February 1, 2018, respondent filed a Rule 4(c) Report. (ECF No. 17.) In the report, respondent conceded that petitioner was entitled to compensation, and that petitioner's injury is consistent with a shoulder injury related to vaccine administration ("SIRVA") as defined on the Vaccine Injury Table. (*Id.* at 1, 3.) On February 2, 2018, a Ruling on Entitlement was issued, which held petitioner is entitled to compensation. (ECF No. 19).

**I. Summary of Facts**

Petitioner was a 20 year old college student, with a part-time job as a Dietary Aide, when she received an influenza vaccination on September 29, 2016 as required by her employer. (Ex. 8 at ¶¶ 1-2, Ex. 1 at 1.) On October 13, 2016, she presented to the Penn Medicine Chester County Hospital Occupational Health Center ("Occupational Health Center") and was seen by Chad Jeffrey, PA-C, with a chief complaint of "Pain after Flu Shot on 9/29/2016-shoulder." (Ex. 2 at 2). Petitioner reported "[i]nitial stiffness/soreness subsided, then about 5 days later greater pain and restriction of movement developed, severe pain as of 10/9 and 10/10." (*Id.*) Petitioner further reported that she was "a little sore for 2 days" after the vaccination, but at "day 4 or 5 she started to increase in her soreness and after working 2 days in a row her pain was really bad – brought her to tears. . . . She has not worked since Sunday and pain has started to subside." (*Id.* at 3). Petitioner was diagnosed with "[p]ain in left shoulder" and permitted to return to full work duty with an accommodation to use her left "hand as tolerated" and to follow-up with the Occupational Health Center in two weeks. (*Id.*)

Petitioner presented again to the Occupational Health Center on October 25, 2016, she reported that she "continue[d] to have pain, but ha[d] been able to manage 'just fine.'" (*Id.* at 5.) Petitioner reported she "only ha[d] pain with certain motions" and that she was "able to sleep with no problem." (*Id.*) Petitioner was discharged, her recommended work status was regular duty, and she was instructed to follow-up in one month if her condition was not improved. (*Id.* at 6.)

Petitioner presented to the Occupational Health Center on January 27, 2017 for a physical examination for a new job in food service. (*Id.* at 9-10.) Petitioner reported her prior work-related injury of "tendonitis in left shoulder as a result from flu shot administration" in her occupational and medical history (*id.* at 12) and was cleared to work without any restrictions (*id.* at 9).

Six days prior to the filling of the instant Petition, on June 9, 2017, petitioner was seen by Thomas Michener, MD at Premiere Orthopedic and Sports Medicine for left shoulder pain. (Ex. 4 at 1.) She reported her symptoms as "chronic traumatic" "occur[ing] intermittently" "mild-moderate" and "aggravated by physical therapy, lifting away from the body and moving the arm suddenly." Petitioner reported that "[i]n addition to left shoulder pain [she] [was] also experiencing decreased mobility, joint tenderness and weakness." (*Id.*) It was noted petitioner had experienced "pain since getting a flu vaccine in September." (*Id.*) On exam, petitioner was noted to have a pain free range of motion in her left shoulder (*id.* at 2), however, Dr. Michener noted she did have "some

underlying hyper laxity and scapular protraction" which he believed "would benefit from a course of physical therapy work on rotator cuff and scapular strengthening." (*Id.* at 3.) Dr. Michener referred petitioner to physical therapy. (*Id.*)

Petitioner did not attempt physical therapy[3] and did not seek medical treatment again for her shoulder until one year later at a June 13, 2018 appointment with James FitzGibbons, MD, with the Orthopaedic Specialty Group. (Ex. 9 at 1.) Petitioner reported that she developed pain in her left shoulder after a flu shot in 2016, that she saw "a doctor at that time, and she just did some home physical therapy type of exercises, and over about 6 months, gradually her symptoms diminished." (*Id.*) She further reported that "[t]his past winter she had a 'flare up' . . . gradually those symptoms settle[d] down as well. Currently she continues to have intermittent pain that can be moderate at times." (*Id.*) Dr. FitzGibbons' impression was left rotator cuff tendonitis and left shoulder bursitis. (*Id.* at 2.) Dr. FitzGibbons referred petitioner to physical therapy and recommended she follow-up with him in four weeks. (*Id.*)[4]

## II. Respondent's Motion to Compel Production of Potentially Relevant Social Media and Video Evidence and Petitioner's Opposition

Subsequent to respondent's concession and the undersigned's Ruling on Entitlement finding petitioner entitled to damages for her SIRVA, a damages order was filed and the parties engaged in informal discussions to resolve damages in this case. (ECF No. 20.) At a status conference convened on May 17, 2017 to discuss the parties' progress resolving damages, the parties reported they were unable to reach agreement as to the appropriate amount of damages and sought a damages hearing.[5] (ECF No. 26.) Respondent requested petitioner file any outstanding and/or updated medical records, as well as all of her social media posts since her date of vaccination. After petitioner objected to this request, the undersigned ordered respondent to file a motion detailing his request. (*Id.* at 2.)

On June 7, 2018, respondent filed a Motion to Compel Production of Potentially Relevant Social Media and Video Evidence (petitioner's "Motion"). (ECF No. 27.) Respondent requests that petitioner be compelled

> to produce the following evidence, from September 29, 2016, the date of the vaccination at issue in this case, through the present:

---

[3] Petitioner avers in her supplemental affidavit that she did not begin physical therapy at first in part because she was working through that June, and then returned home for a short summer college break. She intended to begin physical therapy when she returned to college for her senior year, however with a full course load, job, and preparing for graduation she decided to wait to pursue physical therapy until she returned home, nonetheless petitioner did indicate a "flare-up" with her shoulder injury that school year. (Ex. 10 at ¶6.)

[4] Petitioner avers in her supplemental affidavit that she began the recommended physical therapy regimen. (Ex. 10 at ¶6.)

[5] A damages hearing is set for April 4, 2019. (ECF No. 32.)

1) Social media postings, including but not limited to statements, photos, blogs, and videos, on any of petitioner's social media accounts, including but not limited to Facebook, Instagram, and Twitter, that: 1) refer or relate to pain and suffering petitioner alleges to have suffered due to her September 2016 shoulder injury; 2) refer or relate to any activities in which petitioner participated; 3) refer or relate to the physical capabilities of petitioner; or 4) refer or relate to other, unrelated physical injuries suffered by petitioner subsequent to September 29, 2016.

2) Any video recordings of petitioner, which are available to her and that: 1) refer or relate to pain and suffering petitioner alleges to have suffered due to her September 2016 shoulder injury; 2) refer or relate to any activities in which petitioner participated; 3) refer or relate to the physical capabilities of petitioner; or 4) refer or relate to other, unrelated physical injuries suffered by petitioner subsequent to September 29, 2016.

(ECF No. 27 at 3-4.) Respondent indicates that "[d]ue the paucity of post-injury medical records available in this case, production of the evidence described above is relevant and necessary to a determination of the severity of petitioner's injury, and thus, to a determination of the appropriate amount of compensation to be awarded for petitioner's pain and suffering." (*Id.* at 4.)

On June 21, 2018, petitioner filed Petitioner's Response to Motion to Compel Production of Potentially Relevant Social Media and Video Evidence (petitioner's "Response"), updated medical records, and a supplemental affidavit from petitioner. (ECF Nos. 28-29.) Petitioner asserts respondent's Motion should be denied. (ECF No. 29.) Petitioner argues that requiring the production of all of her social media posts is a "fishing expedition" that is unreasonable, overly-broad and an unwarranted invasion of privacy. (ECF No. 27 at 6, 8-9). Petitioner avers that she "feels 'violated' by having to put all of the personal details of her entire life on display simply because she seeks compensation for a conceded shoulder injury." (*Id.* at 8 citing petitioner's supplemental affidavit (Ex. 10).) Petitioner further argues that her privacy interest and the privacy interests of people she mentions in her posts outweigh the "government's desire to probe each and every aspect of petitioner's personal life." (*Id.* at 9.) Petitioner states that her "privacy is to be strictly protected," under the Vaccine Act and that to compel production of all social media posts is "clearly against Congress' intent." (*Id.* at 9.) Petitioner also argues the scope of respondent's request is unclear noting that at the May 17, 2017 status conference respondent requested all social media posts subsequent to her vaccination, however petitioner asserts in her Response that respondent now requests potentially relevant social media.[6] (*Id.* at 10-11.) Accordingly,

[6] The undersigned disagrees that respondent's request is unclear, and further notes that respondent is not moving for the production of all social media evidence as asserted throughout petitioner's Response to respondent's Motion. Although, respondent, at the May 17, 2018 status conference, initially requested all social media evidence subsequent to petitioner's vaccination, respondent's Motion clarified and tailored his request for specific social media and video evidence. (*See* ECF No. 27 at 3-4.)

petitioner argues that respondent's Motion presents many practical concerns on how to determine the relevancy of petitioner's social media posts and video files. (*Id.*) Petitioner proposes a procedure in which another special master would be appointed to manage discovery and privately review the social media posts and video files, for relevancy, to protect the undersigned from being biased by the posts may be necessary. (*Id.* at 11.)

Petitioner asserts "her rights to equal protection under the law" in the event respondent has chosen this case to compel social media protection based on petitioner's age and status as a college student.[7] (*Id.* at 12.) Lastly, petitioner argues that requiring the production of social media posts in the Vaccine Program might be overwhelming for Program counsel and is contrary to the expedited case processing contemplated by Congress. (*Id.* at 12-13.)

On July 23, 2018, respondent filed Respondent's Reply to Petitioner's Objection to Motion to Compel Production of Potentially Relevant Social Media and Video Evidence (respondent's "Reply"). (ECF No. 34.) Respondent states that the "social media and video evidence is both relevant and necessary, as it may provide contemporaneous evidence regarding petitioner's physical activities from the time of her vaccination to the present" and may assist the undersigned "in determining an appropriate award for petitioner's pain and suffering." (*Id.* at 1.) Further, respondent explains that his request is narrowly tailored to

> social media and video evidence that "refer[s] or relate[s]" to petitioner's alleged damages, her physical activities and capabilities, or other injuries – limitations intended to produce content that will address the factual questions underpinning an accurate damages assessment. Specifically, production of this material may clarify the evolution of petitioner's allegedly ongoing SIRVA, as well as inform a decision regarding petitioner's pain in the months immediately following her vaccination, and is therefore both relevant and necessary to achieving a fair result.

(*Id.* at 9.)

Respondent asserts that providing the requested social media and video evidence would not post an undue burden on petitioner and that the "Vaccine Act explicitly safeguards personal material." (*Id.* at 10-12.)

## III. Analysis

Having fully considered the parties' arguments, the undersigned grants respondent's motion to compel the filing of the requested social media and video evidence for the following reasons. The undersigned notes that Special Master Moran

[7] At the May 17, 2018 status conference, respondent noted petitioner's age, in addition to the paucity of medical records, in making the request for petitioner's social media posts. (ECF No. 26 at 2.)

recently considered whether a petitioner was required to produce social media posts in another case involving the same petitioner's counsel and substantially similar arguments and ruled that petitioner was required to produce this evidence. *Bossenbroek v. Sec'y of Health & Human Servs.*, No. 17-122V, 2018 WL 4790383 (Fed. Cl. Spec. Mstr., Sept. 4, 2018)(Published Order Denying Motion to Quash). The undersigned's finds the analysis in *Bossenbroek* to be cogent and well-reasoned and adopts it in full.

For discovery requests in the Vaccine Program, the Vaccine Act provides that a special master may require "such evidence as may be reasonable and necessary," may require "the submission of such information as may be reasonable and necessary," and may require "the testimony of any person and the production of any documents as may be reasonable and necessary." 42 U.S.C. § 300aa–12(d)(3)(B). Moreover, Vaccine Rule 7(b) permits parties to move, during a status conference or by filing a motion, for additional discovery procedures set forth in the Rules of the Court of Federal Claims, if the evidence is insufficient, and the movant must include the reasons why the current informal discovery techniques have been insufficient. For special masters to make well-informed decisions, the Federal Circuit held that ordering the production of supplemental information is well within special masters' authority over discovery proceedings. *See Simanski v. Sec'y of Health & Human Servs.*, 671 F.3d 1368, 1380-81 (Fed. Cir. 2012); *Whitecotton v. Sec'y of Health & Human Servs*., 81 F.3d 1099, 1108 (Fed. Cir. 1996) (noting that "the permissible scope of the special master's inquiry is virtually unlimited").

In the instant case, petitioner's social media posts and video recordings are reasonable and necessary evidence for the undersigned to determine the appropriate compensation for petitioner's SIRVA. Petitioner contends that the production of her social media posts and video evidence is overly broad and nothing more than a "fishing expedition." However, petitioner ignores that respondent explicitly narrowed and tailored his request for specific social media and video evidence in his Motion. As for the necessity of the evidence, respondent explains, in line with the Vaccine Guidelines,[8] how the social media posts and videos are reasonably and directly relevant to establishing the severity of the ongoing injury petitioner alleges, and thus determining an appropriate award of damages in this case. (ECF No. 33 at 8-10.) The undersigned agrees with respondent that the social media posts and video evidence are relevant and thus reasonable and necessary for establishing petitioner's condition, and pain and suffering, during the significant undocumented time periods where petitioner asserts she experienced an ongoing injury related to her vaccination, to include: October 26, 2016 – January 26, 2016, January 28, 2017 – June 8, 2017, June 10, 2017 – June 12, 2018.[9]

---

[8] The Vaccine Guidelines state that "[v]ideos made prior to and after the administration of the vaccine(s) in question may be relevant to a vaccine injury claim. Likewise, entries in various social media or e-mail messages made at or near the time of the injury claimed may provide information relevant to establishing onset or severity of an injury. Such videos and files should be located and preserved, and their existence reported to the court." Section II, Chapter 3, ¶ 10.

[9] As noted by respondent

Moreover, the reasonableness of the request takes into account the relative burden in producing the information. *See In re Claims for Vaccine Injuries Resulting in Autism Spectrum Disorder or a Similar Neurodevelopmental Disorder*, 2004 WL 1660351, at *8-9 (Fed. Cl. Spec. Mstr. July 16, 2004) (stating special masters "must consider the burden on the party who would be required to testify or produce documents" and holding the vaccine manufacturer's documents were not necessary). Unlike the third party manufacturers that *In re Claims* considered, petitioner, who initiated this proceeding, has relatively little standing to complain that the Secretary is investigating unrelated aspects of her life. Further, petitioner asserts that her SIRVA interfered with her ability to perform many activities she engaged in prior to her vaccination, and by claiming so, she has put aspects of her personal life at issue. (*See* Ex. 8 at ¶10, Ex. 10 at ¶¶ 6, 9.) The Secretary should be allowed to explore the accuracy of this allegation. Petitioner also has not argued that the production is burdensome in regard to it being difficult to obtain the information. Petitioner easily has the capacity to obtain the information she presented on social media, as well as the capacity to obtain any videos to which she has access.

Petitioner asserts a general right of privacy should preclude the filing of her social media evidence, but she has not established that there is a right of privacy with regards to the production of social media. *See Impson v. Dixie Elec. Membership Corp.,* No. 14-632-JWD-RLB, 2015 WL 9413122, at *4 (M.D. La. Dec. 22, 2015) (holding that even if someone maintains a private profile, the content is shared with other third-parties creating no privacy expectations); *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 437 (S.D. Ind. 2010) (noting that although parties might be embarrassed by the production of social networking posts, this concern is outweighed by the fact that the posts have already been shared with other people and that disclosure of the posts are limited by a protective order). Petitioner attempts to ground her right to privacy in the Vaccine Act. She states that Congress intended to protect the sensitive information of petitioners in the Program. (ECF No. 29 at 9.) However, petitioner conflates different aspects of the Vaccine Act. The Vaccine Act states:

> (A) Except as provided in subparagraph (B), <u>information submitted to a special master or the court in a proceeding on a petition may not be disclosed to a person who is not a party to the proceeding without the express written consent of the person who submitted the information.</u>

---

> petitioner's medical records do not establish whether the severity of petitioner's SIRVA was static, whether it gradually improved, or whether it eventually resolved and was replaced by shoulder pain engendered by an alternate cause. Relevant social media and videos may give the [undersigned] insight into petitioner's activities during this period of time and thus inform [the undersigned's] decision on an appropriate award of pain and suffering.

(ECF No. 33 at 10).

(B) A decision of a special master or the court in a proceeding shall be disclosed, except that if the decision is to include information—

(i) which is trade secret or commercial or financial information which is privileged and confidential, or

(ii) which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy, and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

42 U.S.C. § 300aa–12(d)(4) (emphasis added).

Although petitioner references Section 12(d)(4)(B) and Vaccine Rule 18(b), the more appropriate reference is Section 12(d)(4)(A) because Section 12(d)(4)(B) places potential limits on what can be disclosed in a special master's public decision.[10] Section 12(d)(4)(A) sets out Congress' concerns regarding the privacy of information petitioners in the Vaccine Program submit as evidence. Under Section 12(d)(4)(A), Congress permits the disclosure of evidentiary filings only with petitioners' written consent. In petitioner's case, her social media posts and video evidence will remain sealed, if she does not provide written consent to others. In sum, petitioner misinterprets Section 14(d)(4)(A)-(B) by suggesting that her social media posts and video evidence so similar to medical files that Congress recognized the production of social media and video evidence as an unwarranted invasion of privacy.

Additionally, petitioner is concerned about the undersigned's possible bias upon his review of her social media posts. It is difficult to imagine what petitioner's posted that leads her to assert that her postings are so inflammatory that they will prevent a judicial officer from acting fairly. However, after producing the social media posts, she may make a motion for recusal identifying the alleged sources of bias. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (noting that a general assertion of judicial bias because of pre-trial involvement is lacking and this involvement does not thwart well-reasoned and unbiased decisions of fact or entitlement); *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002).

[10] Further, in accordance with Section 12(d)(4)(B) and Vaccine Rule 18(b), petitioner has 14 days, subsequent to the filing of a ruling or decision, to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy, before a decision or ruling is made publically available.

Finally, petitioner is free to file motion to exclude following the submission of her social posts and video evidence. *See Navajo Nation v. United States*, 106 Fed. Cl. 753, 755-57 (2012) (ordering the production of social media posts for e-discovery and allowing parties to assert privilege afterwards).

For the reasons discussed above, the undersigned finds the requested social media posts and video evidence reasonable and necessary for the undersigned's determination of damages in petitioner's case which contains minimal medical records and significant gaps in the filed medical records, and further finds that producing this information is not an undue burden on petitioner, and thus, orders the production of the social media posts and video evidence.

**IV. Order**

**Accordingly, the following is ORDERED**: **Petitioner shall file, by no later than January 18, 2019, the following evidence, from September 29, 2016, the date of the vaccination at issue in this case, through the present:**

1. Social media postings, including but not limited to statements, photos, blogs, and videos, on any of petitioner's social media accounts, including but not limited to Facebook, Instagram, and Twitter, that: 1) refer or relate to pain and suffering petitioner alleges to have suffered due to her September 2016 shoulder injury; 2) refer or relate to any activities in which petitioner participated; 3) refer or relate to the physical capabilities of petitioner; or 4) refer or relate to other, unrelated physical injuries suffered by petitioner subsequent to September 29, 2016.

2. Any video recordings of petitioner, which are available to her and that: 1) refer or relate to pain and suffering petitioner alleges to have suffered due to her September 2016 shoulder injury; 2) refer or relate to any activities in which petitioner participated; 3) refer or relate to the physical capabilities of petitioner; or 4) refer or relate to other, unrelated physical injuries suffered by petitioner subsequent to September 29, 2016.

**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master