# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 17-804V
UNPUBLISHED

| | |
|---|---|
| JULIA HAYES,<br><br>               Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: January 6, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Traci R. Patton, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On June 15, 2017, Julia Hayes filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine received on September 29, 2016. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to an award of damages in the amount **$121,470.00**, **representing compensation of $120,000.00 for her actual pain and suffering, plus $1,470.00 for her past unreimbursed expenses.**

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.      **Procedural Overview**

As noted above, the case was initiated in June 2017. On February 1, 2018, Respondent filed a Rule 4(c) report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 17. Accordingly, on February 2, 2018,  a ruling on entitlement issued finding Petitioner entitled to compensation for SIRVA. ECF No. 19.

The parties were unable to informally resolve the issue of damages, so a briefing schedule was set on March 12, 2020. ECF No. 53.[3] Petitioner filed her brief on June 10, 2020, requesting that I award her $135,000.00 in compensation representing her past/actual pain and suffering. ECF No. 56. Conversely, in a brief filed on September 8, 2020, Respondent argued that Petitioner's award "should be lower . . . arguably significantly lower" than the $125,000.00 to $127,000.00 awarded in the cases cited by Petitioner in support of her proposed award, although Respondent declined to recommend a specific award amount. ECF No. 58 at 7, 11.[4] Petitioner filed a Reply brief on October 2, 2020. ECF No. 60. The parties otherwise agreed an award of $1,470.00 in compensation for Petitioner's past unreimbursed expenses was appropriate, and there are no other damages components in contention beyond pain and suffering. ECF No. 58 at 11, ECF No. 62.

In October of this year, I informed the parties that this case was appropriate for an expedited hearing and ruling, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. ECF No. 61. The parties agreed, and an expedited telephonic hearing took place on December 11, 2020. ECF Nos. 62-63; Minute Entry dated December 11, 2020; Transcript filed December 28, 2020, ECF No. 65.[5] I orally ruled on the pain and suffering damages component at that time, and this Decision memorializes my determination.

II.     **Legal Standard and Prior SIRVA Pain and Suffering Awards**

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages (including out-of-pocket losses as well as pain and

---

[3] By that time this claim had been previously scheduled for a hearing on damages twice. The most recently scheduled hearing was cancelled (and the case stayed) due to Petitioner requiring shoulder surgery. ECF No. 53.

[4] It is unhelpful to resolution of pain and suffering issues when Respondent refuses to propose an alternative award amount – and in fact almost suggests that the sum proposed by Petitioner should be the "starting point" for any ultimate award. Respondent is admonished in the future to be forthcoming about the sum he proposes in disputed pain and suffering cases.

[5] Michael Milmoe appeared on behalf of Petitioner, and Traci Patton appeared on behalf of Respondent at the December 11, 2020 Hearing.

suffering) in SPU cases. I fully adopt and hereby incorporate my prior discussion in Sections V and VI of *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020), Sections IV and V of *Rafferty v. Sec'y of Health & Human Servs.,* No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020), as well as Sections VI(A) and VI(B) of *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.,* No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### III.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for Petitioner's pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on December 11, 2020. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Respondent asserts that pain and suffering awards outside the Program (often arising in state court tort actions) should be considered (and has noted that they tend to be lower in magnitude). However, I find that awards issued *within* the Program (especially as set forth in reasoned decisions) are most persuasive. It is important to bear in mind the policy purposes of the Program – that it is no-fault and is intended to be generous in many regards, resulting in a slightly different scale (that admittedly may produce higher award values than the non-Program comparables pointed to by Respondent). Thus, other

---

[6] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (citing *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

*reasoned* decisions in the Vaccine Program provide the most useful guidance in reaching an award amount in this case.[7]

Pursuant to my oral ruling on December 11, 2020 (which is fully adopted herein), **I find that $120,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering.**

First, I find that Petitioner's pain was severe immediately, and prompted her to seek treatment on October 13, 2016, approximately two weeks after her September 29, 2016 flu vaccination. Ex. 1 at 1, Ex. 2 at 2. Thereafter, she underwent fairly significant *albeit intermittent* treatment for her injury, to include: physical therapy,[8] one steroid injection,[9] an MRI scan,[10] and arthroscopic surgery (Ex. 18 at 1).

Second, Petitioner's medical records establish that she suffered a relatively severe injury. Petitioner's reported pain levels fluctuated over time, initially her pain was reported as very severe, but by June 2017 Petitioner's reported pain was on balance relatively moderate.[11] However, Petitioner's treatment culminated in a surgical procedure nearly three years after her vaccination. On August 2, 2019, Petitioner underwent a left shoulder arthroscopy consisting of

---

[7] I reject Respondent's argument, however, that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. A proffer is simply *Respondent's* assessment of the appropriate amount to be awarded. A special master's approval of an award at a proffered level does not provide a reasoned instance, produced by a judicial neutral, that can be looked to when evaluating the damages to be awarded – even if settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases.

[8] Petitioner engaged in 7 physical therapy sessions prior to her surgery in June and July 2018 (Ex. 16), and 25 physical therapy sessions post-surgery (Ex. 19).

[9] Petitioner received a subacromial steroid injection on August 20, 2018. Ex. 12 at 1-2.

[10] Petitioner's MRI scan occurred on August 15, 2018 and indicated an impression of infraspinatus tendinosis. Ex. 11 at 1-2

[11] Petitioner reported "severe pain as of 10/9 and 10/10" at her initial post-vaccination medical appointment on October 13, 2016. Ex. 2 at 2, 19. But by October 25, 2016, while Petitioner reported continued pain she indicated she could manage "just fine" and she was advised she could return to regular work duty using her left hand as tolerated. Ex. 2 at 5-6. On June 9, 2017, Petitioner reported mild to moderate left shoulder pain that prevented her from working out. Ex. 4 at 1, 3. On June 13, 2018, Petitioner reported intermittent pain that was moderate at times. Ex. 9 at 1-2.  Petitioner reported her symptoms were initially severe post vaccination, but gradually diminished over six months, however she reported a "flare-up" the previous winter. *Id.* On August 20, 2018, Petitioner again reported intermittent pain, that was not excruciating on a daily basis, "really more of a nuisance persisting discomfort in the proximal lateral arm area." Ex. 12 at 1-2. On June 4, 2019, Petitioner reported that her pain was "mild, but persisting," however she noted that her pain had previously returned with a "vengeance" about 8 weeks after her August 20, 2018 injection. Ex. 17 at 1-2.  Post-surgery Petitioner reported a pain level of 5/10 at her initial physical therapy session, her pain level rose and fell over the course of her therapy, however by her final physical therapy session Petitioner reported a pain level of 1/10 with overhead movement. Ex. 19 at 4, 184.

1.  Bankart capsule/labral repair/reconstruction;
2.  Capsular shift; and
3.  Subacromial decompression.

Ex. 18 at 1. Petitioner's postoperative diagnoses included: 1) rotator cuff tendinopathy/bursitis/impingement and 2) Bankart lesion/instability. *Id.*

However, Petitioner made an excellent recovery subsequent to her surgical procedure, and after the completion of an additional 25 physical therapy sessions which included undergoing dry needling treatment which Petitioner describes in her supplemental affidavit as very painful. Ex. 21 at 4. At a November 25, 2019 orthopedic evaluation approximately three and a half months post-surgery, Petitioner reported she felt 75 percent improved with mild pain and noted that the dry needling performed at physical therapy in the posterior inferior part of her shoulder "helped tremendously loosen her up a bit." Ex. 18 at 5. At her last physical therapy session on January 15, 2020, Petitioner reported a pain level of one out of ten with overhead movement, and was assessed by her physical therapist as having "made excellent progress since her surgery and has restored full strength and ROM [range of motion] at this time." Ex. 19 at 184. It was further noted that at that time Petitioner was able to undertake all ADL's (activities of daily living) without limitations and had met her goals. *Id.* Petitioner was discharged and sought no further treatment.

In making my determination, I have fully considered Petitioner's sworn affidavits, and those of her father and friends, which detail the limitations in her overall enjoyment of life, school responsibilities, work and internship duties, and exercise of daily functions attributable to her shoulder injury. Exs. 8, 10, 21-24. While, Petitioner describes ongoing limitations as a result of her injury,[12] I find that Petitioner was significantly recovered at the time of her discharge from physical therapy on January 15, 2020, as described above.

Significant to my determination of an appropriate award in this case are the multiple significant gaps in Petitioner's treatment for her shoulder injury. Petitioner sought *no* treatment for her injury during the following time periods: between October 26, 2016 - June 8, 2017[13], between June 10, 2017 – June 12, 2018[14], and between August 21, 2018

---

[12] In her supplemental affidavit dated May 31, 2020, Petitioner asserts she is 95 percent recovered. Ex. 21 at 4.

[13] Petitioner was however seen by the Occupational Health Center on January 24, 2017 while applying for a new job and listed her shoulder injury as a work-related injury. Ex. 2 at 12.

[14] Petitioner was referred to physical therapy by Todd Michener, MD, on June 9, 2017. Ex. 4 at 3. However, she did not follow-up with physical therapy or seek any further treatment for another year when she saw James FitzGibbons, MD on June 13, 2018. Ex. 9 at 1.

– June 3, 2019. Treatment gaps are a relevant consideration in determining the degree of Petitioner's pain and suffering. *Dirksen v. Sec'y of Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201, at *9-10 (Fed. Cl. Spec. Mstr. Oct. 18, 2018). Petitioner asserts the gaps are due to the fact that she was a busy college student, that she was working and pursuing a prestigious internship, and that she was more comfortable treating in her hometown as apposed to at her temporary college residence. ECF 60 at 10. While these are not unreasonable points (and I *do* consider the overall duration of Petitioner's condition and efforts to resolve it), the fact that she was able to tolerate her pain and other limitations for months at a time, without the need for professional medical care, tends to suggest that overall her injury was less severe in nature than what a person who sought constant intervention sooner might be experiencing.

Petitioner argues that her case is comparable to the *Dobbins*, *Wallace* and *Nute* cases, all of which resulted in awards of $125,000.00 for past pain and suffering.[15] But she requests a higher award of $135,000.00 due to her age and other personal circumstances. I do not find the facts of the case justify such an award, however. Rather, I find that this case is more comparable to the *Stoliker* case (cited by Petitioner in counsel's oral argument), where an award of $120,000.00 was granted, under circumstances similar to this case. *Stoliker v. Sec'y of Health & Human Servs.,* No. 17-0990V, 2020 WL 5512534 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $120,000.00 for pain and suffering and $1,119.77 for past unreimbursable expenses). The *Stoliker* petitioner also suffered a relatively significant injury requiring surgical intervention, and likewise *Stoliker* petitioner also had a significant gap in treatment. I will thus approve a somewhat lower past pain and suffering award.

## IV.    Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $121,470.00, representing compensation of $120,000.00 for her actual pain and suffering, plus $1,470.00 for her past unreimbursed expenses.** This amount represents compensation for all damages that would be available under Section 15(a). The clerk of the court is directed to enter judgment in accordance with this decision.[16]

---

[15] *Nute v. Sec'y of Health & Human Servs.*, No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019) (awarding $125,000.00 for pain and suffering); *Wallace v. Sec'y of Health & Human Servs.*, No. 16-1472V, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019) (awarding $125,000.00 in pain and suffering); *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for pain and suffering).

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master